Morning, Your Honors. Kevin McCormick for the appellants. I've requested four minutes be reserved for a rebuttal. Very well. Your Honors, in this case the plaintiffs never planned to enter into a relationship with the defendant in Ciox Health. When they requested their medical records, they were requesting them from providers that they had seen in the past who had provided them medical care. Instead of receiving a response from those providers, they received a response from Ciox Health. Now, Ciox had obtained their medical records and become the sole means that the plaintiffs could obtain those medical records. Ciox obtained those records through contracts with those medical providers. The contracts that Ciox entered into with the medical providers required Ciox to fulfill the obligations that the providers would have fulfilled under federal and state law. We can see from those contracts that are in the record that Ciox agreed to comply with all the provisions of HIPAA and the HITECH Act. In the contract with Vanderbilt in particular, Ciox agreed that it would follow all of the rules for reimbursement for providing copies of medical records. Now, the agreement to comply with the provisions of HIPAA and the HITECH Act... Did you sue the hospitals, too? No, Your Honor. Why not? Well, in this case, the entity that was providing the medical records and that was charging the excessive rates was not the providers. It was Ciox Health. Suing the hospitals would have been kind of odd because... But isn't the hospital the one that's under the duty to provide the records when you request them? The hospital is and Ciox Health is as well. Ciox... Is Ciox Health... So, the minor saying in the medical records statute is it's a criminal statute, right? Or it would be a violation for a hospital not to provide the records if requested? Put that aside. It doesn't matter. But the hospital is under a duty to provide the records when requested, right? Yes. Okay. Which law are we talking about here? I believe the Tennessee Medical Records Act. The Tennessee Medical Records Act, right? The hospital, in order to fulfill its duty, contracts with another party to do that. Yes, Your Honor. If I get in the mail the records from this third party and I said, oh, wait a minute, that's a violation of the statute. The hospital is supposed to provide it for me. I'm assuming the hospital would say, no, you got the records from this other party. And I say, but I was charged, you know, too much money. Why wouldn't the hospital be a defendant in that? The hospital is the one that contracted... The hospital is fulfilling their duty through the third party. Why are they not responsible for what the third party is charging? Well, Your Honor, they may be as well. In addition to Ciox, who... But why aren't they perhaps the only party responsible? Because it's their duty. Well, specifically under the Tennessee Medical Records Act, it's not only the duty of the hospital. It's also the duty of the agents of the hospital. But the law says the hospital, right? The law specifies the hospital. However, the law was intended to protect patients from excessive fees and to provide patients access. As the Pratt Court and the Tennessee Court of Appeals interpreted the statute, this was a statute that was intended to protect the patients either by the hospital or by agents acting on behalf of the hospital. Ciox... The law... I mean, the statute just doesn't say that. I mean, the statute seems to speak very specifically to the hospital or kind of components of the hospital. And elsewhere in the act, if I recall, it refers to agents with regard to some other entity or something. But perhaps conspicuously omits that with regard to its treatment of hospitals in the state. Yes, Your Honor. In the statute itself, it states hospitals. In interpreting the statute... And they're not a hospital. Correct, Your Honor. In interpreting the statute, the Tennessee Court of Appeals looked at the legislative intent of the statute and found that it was intended to protect both, to protect patients... Well, also, I mean, but we're sort of just leaving the statute itself and divining, you know, some kind of purpose there. But, I mean, the Tennessee Supreme Court has repeatedly said, if the language of the statute is clear, the statute means what that language says, and we don't get into all this other sort of atextual stuff. Well, yes, Your Honor. However, whenever the Tennessee legislature passes a law, it is assumed to incorporate those elements of the Tennessee common law that are in existence at the time. The Tennessee Supreme Court has repeatedly... Was this... The subject matter of this statute and the provision we're talking about, was that somehow addressed by the common law prior to... Yes, Your Honor. How so? An agent under Tennessee law, Tennessee common law, an agent cannot commit an act that the principal is forbidden to commit by law. In this case, if the principal, the hospitals, are forbidden to violate the Tennessee Supreme Court in interpreting... The Tennessee Court of Appeals in interpreting the Tennessee Medical Records Act observed that it was intended to protect patients even when an agent acts on the hospital's behalf. To have a contrary rule would allow a hospital to simply delegate these tasks to an outside service. But that... Again, back to my other... My original question, then. Do you sue the agent or do you sue the principal? Your Honor... In this case, because both have the duty, the Tennessee Supreme Court in a later case looked at the Pratt Court's decision and said, the Tennessee Court of Appeals has decided that a patient can sue a medical records provider acting as an agent of a hospital. The Tennessee Court of Appeals never overruled Pratt. It never said that Pratt was a poorer case. In fact, it cited it with approval. The Tennessee legislature on eight separate occasions has amended the Tennessee Medical Records Act. It did so even after the Pratt decision came down and at no point did it try to take any action to limit the effect of that statute or to abrogate Pratt. What did the district court do with that argument under the Pratt, the Smart Corporation case? Your Honor, the district court held that the Pratt court simply got it wrong. Got Tennessee law wrong, you mean? Yes, Your Honor. Rather than deferring to the Tennessee Court of Appeals, the district court dismissed the case even though it would have fallen squarely within the Pratt decision. As the Tennessee Supreme Court has held, sorry, Your Honor, as this court has held, when we're considering an application of state law and there's an appellate court decision, a state appellate court decision. Well, yeah, I mean, we know. Yes. We know eerie in its progeny. Yes, Your Honor. But what counts is what the Tennessee Supreme Court would have done and Judge Anderson had a pretty reasoned explanation of why he thought this was out of line with Tennessee Supreme Court precedent. And Your Honor, under the, as I had mentioned earlier, the Tennessee Supreme Court has cited Pratt with approval. So I think it's fairly clear that the Tennessee Supreme Court would have upheld Pratt. Which case cited it? It must, I mean, I'm not sure if it was for the proposition we're talking about, but in any event, which case cited it? It was the Brown v. Tennessee Title Loans, 328 Southwest 3rd, 850. Okay. Thank you. Your Honor, on the issue of the HIPAA and high tech claims, or rather the common law claims, which refer to HIPAA and the High Tech Act, under Tennessee law of negligence per se, a violation of a federal statute can be used as a violation of a federal statute can be a basis for a negligence per se claim, even where that federal statute does not provide a private right of action. As SIOX has admitted in their briefs, the Tennessee court, Tennessee legislature or Tennessee as a state, can provide a private right of action to enforce the provisions of HIPAA and the High Tech Act. In this case, the common law of the state of Tennessee provides that right. As the Tennessee Supreme Court... Walk me through that. I mean, how, what kind of extant duty in the common law is the one that you think is relevant? And then, and then how this provides the standard of care, I guess, for that duty? Yes, Your Honor. Under Tennessee common law, duty can arise, the Tennessee Supreme Court has said, in one of six ways, and the relevant ones here are a duty imposed by statute, a duty imposed by contract, or a duty imposed by the relationship between the parties. In all of the cases where this court has held that there is no application of negligence per se, there was not a relationship between the parties sufficient for the application of negligence per se. So what, which duty, I mean, so how do we get to the duty? And what, what is the duty? The duty here is to provide access to medical records to a patient whose own medical information is in your possession. That's, and that's a, that paraphrase is something that, that's your paraphrase, that's not something that's lifted out of the case law. Yes, Your Honor. Under Tennessee case law, there hasn't been a case that, that I've seen anyway that specifically deals with access to medical records. There's one, I mean, it's one thing to talk about a duty to handle medical records with care, don't obliterate them, don't lose them, et cetera. It seems to me perhaps different in kind to talk about a duty not to charge a certain amount of money for them. I mean, there's plenty of case law in the standing context, for example, saying that a company doesn't have a protected interest in the absence of competition. And even if you're harmed by, competitively by some governmental action, that's not going to give you standing. Basically because in this country, it's, there isn't a right to be free from market forces, basically. And so why wouldn't there be, why don't you need some positive law that creates a duty to be free from higher prices, given the general absence of a right to be free from market forces, which in this case manifest, in your view, I would say, is a higher price than they'd like to pay? Your Honor, I see that my time is up. Yeah, please. Thank you, Your Honor. Sorry, I talked too long. Specifically in this case, the cost that's being imposed can be prohibitive to keep a patient from having access at all. Under Tennessee common law, patients had a right to obtain their medical records from their physicians. Normally that can't be required. But then you'd be arguing, you've denied my right of access, not you've charged me a dollar more per page than you should have, which just seems like a different duty, a duty to provide access rather than a duty not to make a profit of a certain amount. Well, no, Your Honor, they're the same duty. Because if you provide, if you impose a cost of, let's say, $20 per page, as a practical matter, people cannot pay that. Or if you're trying to obtain the records for purposes of litigation, it becomes economically infeasible to obtain. Okay. No, I understand. Which would impair the access. The power to And I would like to point out that this is also an access issue. As we saw with Jennifer Monroe's case, she was deprived her medical records for something like 10 months. That kind of delay is impairing access rights. All right. Thank you. Thank you, Your Honor. We'll have your full rebuttal, of course. We'll hear from Mr. Lefkowitz. Good morning, Your Honors. May it please the Court, Jay Lefkowitz, representing SIOCs. And I think the best way to start is to, with Judge Kesslidge, with your questions about HIPAA and the common law duty. And then I'll move to the TMRA issue, Judge Nalbanian, that you raised. Because I think they framed the two sets of issues here. As the district court noted in his opinion at page 13, the parties are in agreement that Tennessee does not recognize an independent cause of action for overcharging. And in order to have a claim that they can raise under HIPAA, and we'll address the Tennessee law separately, in order to have a claim under HIPAA, they need to actually have a common law duty that's independent of HIPAA. If HIPAA didn't exist. What do we do with the language in those cases? And the State of French is one of them that says the statute, it suggests that the statute can impose the duty, right? Yeah. I mean, it uses that language, the statute impose a duty. Yeah. There is some loose language to some of these cases. Teal, for example, which is a Sixth Circuit opinion, was a case where the court said, well, both parties acknowledge that there is a duty under a federal statute. So the court never addressed the issue the way it did in the Myers case. In the Myers case, this court actually looked very carefully at whether there was a duty, and the court said, no, the federal law can't give rise to a duty. You can use the federal duty for a standard of care if there is a preexisting common law duty. And to be sure, if you have ordinary negligence or if you have a common law duty, then you may look to a federal law to say, well, what's the standard of care? And it may even be that if there's a statute with a specific standard of care, that could even constitute negligence per se. But when you have a federal law that doesn't have a private right of action, the only way for a plaintiff to raise a claim that looks or is informed by that federal law is if there's an independent duty. And many of the cases that they cite Is that a Tennessee law proposition? That's actually standard. That's federal common law. I mean, for example But, I mean, this is Tennessee common law. Correct. I mean, Tennessee could have whatever law it wants on this point. It could say if there is, it could say any duty set forth in a federal statute is one that can serve as a duty in a negligence claim. It could say that, right? Correct. And if federal, if Tennessee law either had an independent duty with respect to overcharging, or if it had a statute that said, we find here that if you violate a federal law, that constitutes a violation of state law. Tennessee, for example, could have promulgated a law, could have enacted a law that said a violation of HIPAA's pricing requirements is a violation of Tennessee law. So what duty are they trying to use under the common law here? I mean, this seems like they must, it's like a level of generality thing they must be using. It's a negligence duty, right? Is that what they're trying to do? I think they're claiming some negligence. But the negligence, again, they're not suggesting, for example, that we charge them for 100 pages, but we only gave them 10 pages. That would be a common law fraud claim. And we all know there's a common law fraud claim. There isn't, as you point out, Your Honor, a general claim about overcharging. If I decide this afternoon to buy a bottle of water in the airport on my way back, I'm going to pay $4 for the bottle of water that I could buy down the street for $1. I don't have a claim for overcharging under the common law. So in the absence of some specific state law statute, which we'll get to in a moment, or an independent common law duty, there is no... Let me ask you about this language in a state of French again. It says the two prerequisites for a negligence per se claim are present here. Ms. French belonged to the class of persons the federal and state nursing home regs were designed to protect, and her injuries were the type that the regulations were designed to prevent. Why isn't it that the plaintiffs belonged to a class of persons the federal regs were designed to protect, not being charged unreasonable fees, and the injuries, the money they paid, were the type that they were designed to prevent? Your Honor, I was very puzzled, and I read those cases over and over and over again over the last few days, and they all have that same formulation. And if you read those cases carefully, and Myers lays it out probably the most clearly, that paragraph about looking to determine negligence per se always presupposes that there is already an existing duty. And what this Court said, explaining this in the Myers case, was the doctrine of negligence per se was created not as a means of deciding when a duty of care arises, but rather as a means of defining the particular standard of care. Where the law imposes a duty, then the doctrine of negligence per se provides the violation of the statute and could give rise to a conclusive presumption of negligence. And that's at 17F3, 899 to 900. And that language is, I think, a little confusing in a state of French, but it always has to happen. And indeed, when a federal statute doesn't even have a private right of action. I apologize. Counsel, under your supposition, is there any remedy for grossly overcharging a patient for this material? Is there any remedy whatsoever under your supposition? No. The answer is no. My answer is absolutely there is. It's not a remedy under the common law. But there is Tennessee's legislature has enacted a statute, the TMRA. And the TMRA, the Texas Medical Records Act, which, as Judge Nalbanian pointed out, applies to hospitals and it even applies, as Judge Kessler has pointed out, to certain agencies of a hospital. A hospital, it may be its employees, an agency licensed by the board. It doesn't apply here because there's a case, this Pratt case, in the Court of Appeals that agrees with you, apparently, that it is applicable. Well, I don't believe it's applicable, Your Honor. I believe that... Well, it doesn't agree with you. I believe, if I can just amplify, that the Pratt case completely misread the statute. And it misread the statute because I think it may have not focused on the fact that there are individuals, patients, who believe that they have been overcharged. Beyond what Tennessee's legislatures have said, it's within a safe harbor. And if you charge more than that safe harbor, then there's absolutely a cause of action. But you bring that cause of action against the hospital. So the patients are protected. But to answer Judge Merritt's question, I mean, were you going to say that, yes, there's a remedy when the patient is making the request? I mean, what were you going to say? There are two different points here, Your Honor. There's no federal common law here. There's no state common law. So there's no claim under HIPAA. You're talking about the Tennessee... Under the Tennessee, correct. So the Tennessee Records Act does provide a remedy, but only against the hospital. And if they sue the hospital, they have the possibility of recovering. Can we just... This case has been decided by the Court of Appeals that says the Act applies to independent entities that are retained to provide copying services for hospitals. That's what the case says. So you just say that's wrong. That is absolutely wrong. And in fact, the Tennessee Supreme Court, like I think almost every Supreme Court, has made clear the way to read a statute is first and foremost by its plain language. And if the plain language is absolutely clear and unambiguous, then... Your Honor, I would bet my bottom dollar that it cited that case for the voluntary payment doctrine issue, which was the principal issue in that case. I don't believe that when that... This doesn't apply to gross overcharges. Nothing applies, right? Well, again, Your Honor, I think it applies to gross overcharges, not even gross overcharges. It applies to any overcharge above Tennessee's safe harbor. The question is who you can sue for a violation of the Tennessee Act. But if an entity like PsyOx were to charge some exorbitant rate in order for a patient to get his medical records, you know, for a treatment-related need, there would be... Would there be any cause of action here? I mean, they're not a hospital, you know? That's the provider. That raises two questions. If a patient were making the request, as opposed to a lawyer, then that would potentially, that would, I think, likely constitute a violation of HIPAA and HHS would have recourse, because HHS can bring an action. But you would not have a private cause of action, that patient would not have a private cause of action under state or federal laws, as you're construing. Would have a private right of action against the party to whom he requested or she requested the records, the hospital. So the plaintiff here, or the plaintiff's whatever, could sue the hospital and say, your third-party agent is overcharging me. And then they could third-party in the agent if they wanted. And there are... Correct. Or could they just sue them both and say, you guys sort out who's responsible for the charges, all I know is I got overcharged and you can't do that. The proper way to do that would be to sue the hospital. The hospital has contracts that it's required to have under federal law with these records providers and their indemnification agreements, and there's no question that you can sue the hospital. Now, in this case, all but one of the charges at issue falls within the safe harbor under Tennessee law. But leaving that out... Can I ask you a question now? Yes. Sure. Is PsyOx an agent of the hospital, relevant hospital here? PsyOx may well be an agent of the hospital for purposes of... They have a contract. I mean, for purposes of providing... They certainly have a contract with the hospital where they agree to fulfill records requests. But they are not... The statute specifically is limited to hospitals and it's a defined term. Did the plaintiff's request in this case go to the hospital? Yes. And the hospital outsourced it to PsyOx?  The plaintiffs didn't actually make the request. Their lawyers made the request. And in fact, this is really relevant to the HIPAA point. They made the request not as personal representatives. They made them actually as authorized parties by the personal representatives, the mother and the father of the relevant patients. But that all goes to the HIPAA part, which I think is clear. There's no independent common law claim and there's also no private right of action. And under Tennessee law, the question really for this court is, if you look at the statute and conclude as Judge Anderson did, that under Tennessee law, the clean, proper reading of the statute is that you only have a right of action against the hospital, then you should affirm Judge Anderson's decision. That doesn't mean, however, that plaintiffs who are similarly situated don't have a remedy because Tennessee law does provide a remedy. It's just that Tennessee's legislators made clear that the party to whom you sue is the hospital and not a records provider. So here, they could have brought, if they thought the rates were excessive, they could have sued the hospital from which they requested the records and then potentially that hospital might have brought PsyOx into the case? Inevitably and invariably they would. Do you have any speculation as to why you were just sued directly? I don't know. I wasn't involved in the case from its inception. But in many, many other cases that I've been involved in, that is the situation, the proper party to be sued. Now, there are some states that have broader statutes that specifically say you can sue any agent and when they do that, then it's fair game to sue the agent. Why do you think you're within, just remind me, why are you within the state, I'm sorry, safe harbor in your view? We're within the safe harbor, Your Honor, because with respect to the two invoices for Faber, which is at page 89 of the record, you will see that there's a basic fee of $18 which under Tennessee code annotated 6811304A2A3A1 is the safe harbor for a basic fee. It is presumed to be reasonable. And then... Presumed. Is it a rebuttable presumption or is it as long as that number is within, you're just presumed to be okay and you're fine? Well, there's no case law in Tennessee on this. The statute simply says the following charges are presumed to be reasonable. They don't have any allegation and they're not even challenging with respect to the safe harbor provisions. And then, in fact, the statute goes on... Weren't there a couple of charges that are not provided for and there's a shipping charge and something else that are not in the statute? Absolutely, Your Honor, and I'm glad you raised that. First of all, they object to the shipping charge in their complaint. They never mention the shipping charge again in the briefing, neither the opening brief nor the reply brief mentions the shipping charge and the class definition doesn't even include shipping. With respect to the electronic delivery fee, they do raise that, although my contention with respect to the electronic delivery fee is all they have said is, particularly with respect to Ms. Monroe, who actually requested electronic delivery, they simply say, reciting just the terms of the statute, it was unreasonable. And again, they don't explain why when they asked to have that hosted on an electronic website for X number of days so that their lawyers could access it, they don't in any way explain why it's unreasonable. But I understand that that one charge of $2, they allege to be unreasonable. I think they don't meet the pleading standard. Their defense is they cite a bunch of Tennessee courts. Yes, sure. You seem to be arguing that in order to have a cause of action, you've got to sue the hospital, that there is no independent cause of action, no way to sue your client. Am I right in that? Yes, there is no private right of action under Tennessee law to Overcharge is being made, allegedly, by your client, but your position is you can't sue your client, you've got to sue the hospital and go at it indirectly. The hospital, Your Honor, is the party that has the obligation to make the records available, and the hospital is the one on whom the price limitation is legislated. And the hospital is required under federal law to have a contract with a records provider that incorporates within it these indemnity provisions. So I think the individuals are completely protected in the event that they have a viable claim. So you've got to sue the hospital. But you have to sue the hospital, that's exactly right, Your Honor. The last point I was just trying to make as I stopped was, on this question of electronic delivery fee, they claim that they plead this sufficiently, but they cite Tennessee cases which have a notice pleading requirement and not the federal standard. Just real quick, one thing that really struck me about this case, are you familiar with the Merrill Dow Supreme Court case? A little bit. My colleague is much more familiar with it. Merrill Dow is a case where the Supreme Court said there is no federal question jurisdiction over a claim that is just like this. A state law claim that purports to have an embedded federal duty. And the court said notwithstanding that federal issue and the state claim, we're not going to exercise jurisdiction over this because Congress did not provide a cause of action for the statute giving rise to that federal duty. And they said we would defy Congress's intent if as a federal court we then provided remedies for thousands of people who are claiming a violation of federal law through the vehicle of a state claim. And they said we're just not going to adjudicate this. Here we have a diversity basis of jurisdiction, but I welcome your thoughts. But it just strikes me as ironic that Congress chose not to provide a cause of action under HIPAA, and yet we would be providing remedy, mass remedies for this. I definitely agree. The HIPAA side of this case, I think, is absolutely clear and clean because HIPAA says HHS can enforce this and nobody else. And they're trying to basically engraft the HIPAA limits because they know that fundamentally what's going on here is the charges, with the exception potentially of electronic delivery fee charge, are all within Tennessee's safe harbor. So they know that Tennessee's legislatures didn't think that that was problematic. On the other hand, they don't have a private right of action under federal law, so they're trying to use the private right of action under Tennessee law to basically enforce fee restrictions that Tennessee doesn't think are problematic, only that Congress might with respect to individual requests, but for which they haven't allowed a private right of action. Okay. Any further questions? All right. Thank you so much. Thank you very much, Your Honor. We're here for Mr. McCormick. Your Honor, Congress did not intend for the federal law, the lack of a private right of action to be the only relief. To be more clear, since that was unclear. Congress explicitly intended that a state could provide a private right of action to enforce the requirements of HIPAA. So I mean, I recall you touched on this in your brief. Where is this coming from? Your Honor, that's in both the statute as well as in the regulations. What statutory language indicates that Congress wanted or intended for this duty to be incorporated into state law claims? Your Honor, HIPAA allows for a private right of action. The specific language is from Public Law 104-191, Title II, Subtitle F, Section 264. A regulation promulgated under Provision 1 shall not supersede a contrary provision of state law if the provision of state law imposes requirements, standards, or implementation specifications that are more stringent than the requirements standard. There's always a difference between a substantive legal standard and a cause of action to enforce that standard. That's just talking about not preempting substantive state law standards, it sounds like, as opposed to creating a cause of action. Yes, Your Honor. Congress was silent on a private right of action in the HIPAA statute. If we look at the regulations, in passing the regulations, HHS stated that the fact that a state law allows an individual to file a civil action to protect privacy does not conflict with the HIPAA penalty provisions. Again, we can look at 45 CFR 160.202 and 203. What about the argument that HIPAA is simply inapposite here because the patient did not request the records and neither did a personal representative, as that term is used under HIPAA? I think now we're talking about a reg, regrettably, and as the regs use that term in other places, it seems pretty clear they're referring not to agents or attorneys, but to people with authority to make health care decisions, kind of more personal, like guardians, trustee of an estate, as opposed to a law firm. And so why isn't HIPAA just simply inapposite? For two reasons, Your Honor. Number one, the class definition in this case involves individuals who requested their medical records directly, and that's approximately, although this isn't in the record, it's approximately 15 to 20 percent of the class, as well as people who requested through an attorney. That sounds like a problem with the class, but I mean, but the name plaintiffs are not in that situation, is my understanding. No, Your Honor. Mrs. Monroe originally did request her records personally. She had follow-up requests. Did she pay, I mean, these fees personally, so that now she's the one who's saying she was overcharged? Both Mrs. Monroe and Mr. Faber paid it out of the settlements in their case. Okay. But, I mean, that's, yeah, I know, but that's a different step. I mean, they didn't pay PSIOCS, but they had an agreement with their lawyers to reimburse them. Correct. Not directly. As to the personal representative issue, the regulation states that if a person has the authority to make decisions related to medical care, and PSIOCS admits that includes decisions related to payment, that person qualifies as a personal representative under the statute. Now, in this case, attorneys have to Where does it say that? Your Honor, the specific statement that a person is a personal representative, now, Your Honor, that's in the regulations. Okay. And I'm, I'm sorry, can you say that again? Yes. If a person has the authority to make decisions related to medical care. Right. But the paralegal didn't have that. Well, yes, Your Honor. The decision related to medical care, as PSIOCS admits, can include a decision related to payment for medical care. In this case, personal injury attorneys have to make those decisions. This isn't anything related to the provision of medical care. No, Your Honor, not to the provision, but to the payment for medical care. I don't think, that seems like kind of a strange reading of that. Well, Your Honor, that's the language of the regulation, and the language of the HHS interpretation when they passed the regulation, was that the term related to medical care includes decisions related to the payment of medical care. You have anything, you want to wrap up for 30 seconds? It's red, but Mr. Lefkowitz, we asked him questions. Okay. Can I ask you about the class issue? So, the class has been certified, and your position is that we would send out a notice, that a notice should be sent out now, or No, Your Honor. If we were to, let's say we were to affirm, would we send, would we direct a class notice to be sent out, or how would we deal with that? No, Your Honor, under Federal Rule of Civil Procedure 23, when you certify a class, it's presumed that that has occurred before any kind of a dispositive motion, any summary judgment motions. The case law, and we cited some of this in our brief, although there's ample case law throughout the country, when a defendant moves for summary judgment prior to class certification and notice being sent to the class, they're taking their chance that it will only be binding on the individual named representatives, not on the class as a whole. But if that, okay, assume that's true for a second here, does the notice still go out? No, Your Honor, none would need to go out. It would be as if the class was never certified? Correct, Your Honor. Or it would be binding only on the named plaintiffs? Well, it could be binding only on the named plaintiffs, but could you still send a notice out and say, hey, there was this class that was certified, turns out your side lost, but you're not bound by it because you didn't get this notice, but we're giving you this notice? Well, no, Your Honor, I don't think any notice would need to be sent out in that case since there's no legal right being affected on behalf of the class members. If it's only binding on- Does it indicate the class certification then? No, Your Honor, under the judgment rule, when you have a class action judgment, it can specify who it applies to. And in this case, the judgment would merely need to be amended to state that it only applies to the named plaintiffs. What would the court do with the rest of the case? All those class members are now part of the case. Well, Your Honor, since they did not receive notice, they couldn't be bound by it. Right, so, but you're talking about only deciding a part of the case now. The case includes all these class members. The district court, you're suggesting, enters in this scenario, enters judgment against the named plaintiffs, but we have all these unnamed class members who are in the case because of certification. What does the court do with them? Your Honor, I just think- I mean, vacate the certification? I think the cleanest way would be to vacate the certification and specify that the judgment is only applicable to the named class members. Okay. And, Your Honor, I did have one- Go ahead, real quick. Thank you, Your Honor. Judge Merritt, you asked whether there's any remedy, and the answer is, practically, there would be no remedy. Why can't you sue the hospital and just go through this program that we talked about? Sue the hospital, which is the party you requested the records from, and then they can bring in PsyOx or whoever, you know, charge the fees. Why doesn't that work fine? Well, I suppose it is possible to sue the hospitals, but in this case, the hospitals have assigned all of their duties to PsyOx. So what? I mean, your position is PsyOx is an agent, right? So you allege that in the complaint, sue the hospital, their agent, PsyOx, overpaid us, and they've got to have these agreements under HIPAA, et cetera, et cetera. You've got a clean cause of action under Tennessee law. Why not do that? Well, that is a possibility. However, in this case, it's not necessary because the agent is required to follow the same laws that the principal is required to follow. Okay. Practically, there would be no remedy. And as Tennessee Supreme Court has specified, where there is a right, there is a corresponding remedy. That's the Latin proposition, ubi just, ibi remedium. I tell my students in Fed courts, everything goes back to Marbury. And John Marshall said it in Marbury. Yes, Your Honor. And I believe that's something that, Judge Merritt, you have identified in previous decisions from the Sixth Circuit, and it's been identified by the Tennessee Supreme Court as well. Yeah. All right. Thank you. Thank you both for your arguments. Thank you very much. Thank you, Your Honor. Clerk may call the next case. Peace and mercy of God. Peace and mercy of God. Peace and mercy of God. Yeah.